John H. Hebert (#010633)
Mark W. Roth (#010708)
Philip R. Rudd (#014026)
Mary B. Martin (#019196)
**POLSINELLI SHUGHART PC**
CityScape Plaza
One E. Washington, Suite 1200
Phoenix, AZ  85004
Telephone: (602) 650-2000
Facsimile: (602) 264-7033
E-mail: PhoenixBankruptcyECF@polsinelli.com
E-Mail: jhebert@polsinelli.com
E-Mail: mroth@polsinelli.com
E-Mail: prudd@polsinelli.com
E-Mail: mmartin@polsinelli.com

*Attorneys for the Debtor*

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>SUPERSTITION PROMENADE, LLC,<br><br>Debtor. | Chapter 11 Proceedings<br><br>Case No.  2:11-bk-04236-SSC<br><br>**EMERGENCY MOTION FOR ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL** |

SUPERSTITION PROMENADE, LLC, the debtor and debtor-in-possession herein ("Debtor"), by and through undersigned counsel, pursuant to 11 U.S.C. §363(c) and Rules 4001(b) and 9014, Federal Rules of Bankruptcy Procedure, hereby requests that the Court enter its order authorizing the Debtor to use rents and other income generated by the Debtor's property to pay for the Debtor's ordinary and necessary operating and reorganization expenses as set forth in the proposed budget attached hereto as Exhibit "A" (the "Budget").

In support of this "Motion for Authorization to Use Cash Collateral" ("Cash Collateral Motion"), the Debtor states as follows:

### JURISDICTION AND VENUE

This Court has jurisdiction over this case pursuant to 28 U.S.C. §1334.  The subject matter of this motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (M).  Venue is proper under 28 U.S.C. § 1408.

1

2784183.1

## FACTUAL BACKGROUND

1. The Debtor is an Arizona limited liability company authorized to do and doing business in the State of Arizona.

2. The Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code, on February 22, 2011 (the "Petition Date").

3. The Debtor is operating its business and managing its assets as a debtor-in-possession in accordance with 11 U.S.C. §§ 1107 and 1108.[1]

4. The Debtor owns and operates that certain real property known as Red Mountain Promenade, located at the southwest corner of Power and McDowell Roads, in Mesa, Arizona (the "Property"). The Property consists includes 14.620 net acres and is improved with six retail buildings containing a total of 60,251 square feet of net rentable area. The subject buildings are further identified as follows:

> Major B - a junior major space containing 10,000 square feet currently vacant;
> Shops A - multi-tenant shop space containing 13,632 square feet immediately adjacent to the east of Major B;
> Shops C - multi-tenant shop space containing 16,213 square feet immediately adjacent to the west of Major B;
> Pad 1 - multi-tenant restaurant space located at the front of the project on McDowell Road containing 6,225 square feet of vacant space;
> Pad 2 - multi-tenant restaurant space located at the front of the project on McDowell Road containing 6,225 square feet and 100% leased to one restaurant tenant;
> Pad 5 - multi-tenant shop space located on Power Road containing 7,956 square feet of vacant space.

Major B, Shops A, and Shops C were completed in the first phase of the project in April 2007. The three pad buildings were completed in the second phase of the project between November 2008 and January 2009. The third (future) phase of the project includes a planned 36,000 square foot major space and 3,000 square feet of attached shop space to be located at the southwest corner of the project. The Property also includes two finished pad sites located at the northwest and northeast corners of the project with frontage to McDowell Road. The two pad sites

---

[1] Unless otherwise indicated, all references to code sections herein shall be to the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

2784183.1

are identified as Lots 2 and 3 of Red Mountain Promenade and include 1.254 and 0.570 net acres, respectively.

5. Heritage Bank, NA ("Lender") has asserted a claim against the Debtor, allegedly secured by the Property, in the amount of approximately $15.9 million.

6. In November 2010, Lender filed certain pleadings in Maricopa County Superior Court for the State of Arizona (the "State Court") seeking the appointment of a receiver over the Property. On November 2, 2010, the State Court entered its order appointing Arcadia Management Group, Inc. ("Receiver") as receiver over the Property. The Receiver has been in possession and control of the Property. A trustee's sale of the Property is scheduled for February 22, 2011.

7. Despite the Debtor's best efforts to negotiate a resolution with the Lender as to the asserted claims, the Debtor was unable to reach an agreement with Lender and filed its voluntary petition for relief on the Petition Date in order to reorganize and restructure its debts and liabilities for the benefit of all parties-in-interest.

8. The Debtor has provided the Receiver with notice of the filing of the bankruptcy case and has demanded turnover of all property of the Debtor.

9. Prior to the appointment of the Receiver, the Property was managed by Pasternack Properties/Irwin G. Pasternack AIA & Associates, PC ("Pasternack Properties"). Pasternack Properties is a well-respected, manager of commercial real properties throughout the Valley. Pasternack Properties will resume the management of the Debtor's Property.

10. In order to continue operating and maintaining the Property during the pendency of this Chapter 11 case for the benefit of all creditors and parties-in-interest, it is necessary for the Debtor to use the rental and other income from the Property to pay for the ordinary and necessary operating and reorganization expenses of the Property and the Debtor.

11. The Debtor's projected income and expenses for the next ninety (90) days (*i.e.*, through May 31, 2011) are identified in the Budget that is attached hereto as Exhibit "A."

12. As reflected in the Budget, the Debtor's income includes base rental income from tenants of the Property and common area maintenance reimbursement income (collectively, the "Income").

2784183.1

13. Also as reflected in the Budget, the Debtor's expenses include utility expenses, maintenance and repair expenses, janitorial expenses, landscaping, trash removal, water and sewage, insurance, and ordinary and customary property management fees (collectively, the "Expenses").

14. On information and belief, Lender asserts a lien in the rental and other income generated by the Property, and that such income constitutes its "cash collateral" as defined in 11 U.S.C. §363. The Debtor has not had sufficient time to determine the validity, priority, enforceability, and/or extent of Lender's asserted lien. Accordingly, the Debtor reserves all rights with respect thereto.

15. The Debtor proposes to use the Income to pay the Expenses in accordance with the Budget, with a ten percent (10%) variance of the total Budget.

16. It is crucial for the Debtor to have the use of the Income to operate, maintain and preserve the Property in order to, among other things, (a) maintain tenant relations and comply with its obligations as a landlord to the Property's tenants, (b) continue marketing the Property to prospective tenants in order to improve the Property's cash flow, and (c) preserve the going concern value of the Property while the Debtor formulates and implements a plan of reorganization.

17. The Debtor believes that its business operations and reorganization efforts will suffer immediate and irreparable harm if it is not allowed to use the Income to pay the Expenses. Indeed, the value of the Property will decline if the Expenses are not paid.

18. To the extent that the Property generates Income in excess of the Expenses, as the Budget reflects, the Debtor will hold and sequester such excess Income, subject to whatever rights Lender has in the Income pursuant to its lien.

19. The Debtor believes that it is important to provide this Court with an overview of its relationship with the Lender relating to the loan. Prior to the commencement of this case and as referenced above, the Debtor and Lender were involved in litigation, *Heritage Bank, NA vs. Superstition Promenade, LLC, et al*, Case No. CV2010-029949. In this litigation, the Debtor has asserted certain claims against Lender including, among other things, breach of contract, breach of duty of good faith and fair dealing, interference with an advantageous contractual relationship, and

2784183.1

interference with prospective economic advantage arising from Lender's failure to disburse the full amount of the initial advance under the loan documents, failure to disburse several subsequent advances, failure to disburse tenant improvement funds from monies held in reserve, and unilaterally reallocating tenant improvement money to its own benefit within the construction loan. The Debtor believes that it has a valid and strong case against Lender and intends to pursue any and all claims that it may have against Lender.

## LEGAL ANALYSIS

Pursuant to 11 U.S.C. §363(c)(2), the Debtor may use cash collateral if the entity holding an interest in such cash collateral consents or, if after notice and a hearing, the Court authorizes its use. Where an entity objects to the use of cash collateral, the Court still may permit its use by the Debtor upon a showing that the rights of the objecting party are adequately protected. 11 U.S.C. §363(e); See Collier on Bankruptcy §363.04, 15th Ed., 1989.

Section 361 of the Bankruptcy Code specifies three means of proving adequate protection; however, as indicated in the legislative history to that section, such means are "neither exclusive nor exhaustive." Generally, the "interest in property sought to be protected under Code § 361 is the value of the secured creditor's collateral during the interim period between the filing of the petition and confirmation of a plan of reorganization, or dismissal of the case." *In re 499 W. Warren Street Associates, Ltd. Partnership*, 142 B.R. 53, 57 (Bankr. N.D.N.Y. 1992) (citation omitted).

Thus, courts have consistently found that a debtor's use of cash collateral to pay the reasonable and necessary operating expenses of the debtor's property, by itself, satisfies the "adequate protection" requirement of § 363(c)(2). *See e.g. In re R&G Properties, Inc.*, 2009 WL 2043875 at *6 (Bankr. D. Vermont 2009) (and cases cited therein); *In re Princeton Square Associates, L.P.*, 201 B.R. 90, 96 (Bank S.D.N.Y. 1996) ("The use of rents by a debtor in possession to maintain the property to the same extent that receiver of rents would use the rents does no economic harm to the lender … Adequate protection is required for the 'use' of the secured creditor's collateral. In the context of rents, this court concludes that no monetary protection is required to be provided by the debtor in possession to the secured creditor to the extent that the rents are applied for the maintenance of the property in the manner a receiver would apply the

5

rents."); *499 W. Warren Street Associates,* 142 B.R. at 56-57 ("Under appropriate circumstances, use of a portion of the rental income to pay the reasonable and necessary operating expenses of the property satisfies [the adequate protection requirement].").

The Debtor's proposed use of cash collateral will not endanger the value of Property claimed as collateral by the Lender. In fact, maintenance of the Property would only serve to protect the value of the property, and as a result, the Lender's asserted interest. Therefore, the Lender is adequately protected and the Debtor should be permitted to use of the cash collateral from the Property to pay the expenses associated with maintaining, preserving and improving the Property.

Based on the foregoing, the Debtor respectfully requests that the Court enter its order authorizing the Debtor to use the Income to pay the Expenses in accordance with the Budget, with a ten percent (10%) variance, for the next ninety (90) days with the right to seek additional use of the Income after the expiration of such period.

DATED this 22nd day of February, 2011.

POLSINELLI SHUGHART PC

By: /s/ Mary B. Martin
John J. Hebert
Mark W. Roth
Mary B. Martin
CityScape Plaza
One E. Washington Street, Suite 1200
Phoenix, AZ 85004

*Attorneys for Debtor*

**COPY** of the foregoing mailed (or served via electronic notification if indicated by an "*")
on February 22, 2011, to:

OFFICE OF THE U.S. TRUSTEE
* USTPREGION14.PX.ECF@USDOJ.GOV
230 North First Ave., Suite 204
Phoenix, AZ 85003-1706

SEAN K. MCELENNEY
* skmcelenney@bryancave.com
JACOB A. MASKOVICH
* jamaskovich@bryancave.com
BRYAN CAVE LLP
Two North Central Ave., Suite 2200
Phoenix, AZ 85004-4406
*Attorneys for Heritage Bank, N.A.*

2784183.1

| | |
|---|---|
| SOUTH HAMPTON GROUP<br>745 E. Maryland, Suite 100<br>Phoenix, AZ 85014 | ARCADIA MANAGEMENT GROUP, INC.<br>P.O. Box 10<br>Scottsdale, AZ 85252 |

/s/ *Mary Engel*

2784183.1